Charles L. TOLLIVER, Appellant,

v.

J.R. YEARGAN; James E. Halligan; Charles W. Oxford; James E. Martin; University of Arkansas, Appellees.

No. 83–1866.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1984.

Decided Feb. 29, 1984.

Richard Quiggle, Little Rock, Ark., for appellant.

David A. Stewart, Associate General Counsel, University of Ark., Little Rock, Ark., for appellees J.R. Yeargan, et al.

Before ROSS, JOHN R. GIBSON and BOWMAN, Circuit Judges.

ROSS, Circuit Judge.

This appeal was brought by Dr. Charles L. Tolliver from the district court's[1] dismissal of his employment discrimination claim against the University of Arkansas, Fayetteville. The district court's opinion is published at 567 F.Supp. 116.

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

The facts are essentially these: Dr. Tolliver was hired by the University in 1976, as an Electrical Engineering Professor, in an attempt by the University to improve minority representation on the faculty. He received a 12-month contract as a result of special minority recruitment duties he was to undertake. The normal contract for regular faculty members was nine months. He was extended tenure after his first year as a faculty member.

In February 1977, Dr. Yeargan became the chairperson of the Electrical Engineering Department, and had the responsibility of evaluating faculty and making salary recommendations. Raises were to be based on performance, and the areas of evaluation included service, teaching and research.

Dr. Tolliver's raises were generally lower than the majority of the department faculty but higher than at least one white department member. ·The appellant was evaluated as "good" in the area of service. His teaching load was considered "average," although some semesters it was comparatively light. Several student complaints were received concerning Dr. Tolliver's competency and effectiveness as an instructor. Finally, with regard to research, he never submitted any proposals in his area of academic specialty, nor had he submitted any manuscripts for publication, although encouraged to do so. All of appellant's proposals were in the area of minority affairs.

In the 1980–81 academic year, the appellant's contract was reduced to nine months in conformity with the other faculty contracts in the department. This was due largely to a decrease in private funding received for minority programs. Although Dr. Tolliver's contract was reduced to nine months, he has continued to work 12 months a year. Dr. Halligan, Vice-Chancellor of Academic Affairs, testified that this normally results in a salary increase because the salary for a 9-month contract is 80 percent of a 12-month contract, and a summer contract pays an additional 33 percent.

On the basis of these facts the district court held that Dr. Tolliver had failed to make out a *prima facie* case of racial discrimination, and that even if he had, the defendants articulated a legitimate nondiscriminatory reason for their actions which was unrebutted by the appellant.

Dr. Tolliver presented three allegations of discriminatory treatment. First, the reduction of his contract from 12 to 9 months; second, the low salary increases; and third, racial harassment.

■ As to the reduction of appellant's contract from 12 to 9 months the district court found that even if the reduction was *prima facie* discriminatory, the University had a legitimate reason for the reduction, *i.e.,* the funding from private sources donated specifically for his minority programs had been reduced. This factual determination was not clearly erroneous. *See Wagh v. Nimmo,* 705 F.2d 1020, 1021 (8th Cir. 1983).

■ With regard to the salary issue, Dr. Tolliver claimed that his pay raises were not commensurate with his overall performance, and were disproportionately low when compared to white professors' raises. In support of his position the appellant offered statistical evidence showing his raises to be lower than his counterparts.

The court was not persuaded by Dr. Tolliver's expert witness in this regard. The court found that, based on the expert's testimony, appellant had in one year been given a raise in excess of that to which he was entitled. Furthermore, the variables used in the expert's model were different than those used by the University. The court concluded that the expert's model did not work well in the instant case. We are not left with the definite conviction that a mistake was committed by the district court, therefore the determination is not clearly erroneous. *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ In support of his harassment claim, Dr. Tolliver presented evidence that he was referred to by his last name rather than "Doctor"; that whites did not knock on his door; that he was placed on numerous committees for the "tokenistic" purpose of in-

creasing black representation; and that his secretaries did not like him.

The district court rejected appellant's claim stating:

What Plaintiff seems not to realize is that it is a trait of human nature that some people instinctively resent a situation wherein a person "from the outside" is brought in, given a full associate professorship, moved "ahead" of several faculty members already employed at the University, and given an unusual twelve-month contract rather than the usual nine-month contract, regardless of the race of the person involved.

567 F.Supp. at 124. The court determined that the work environment was not so polluted with discrimination as to substantially affect appellant's employment, and that the minor animosity which existed toward Dr. Tolliver was not grounded in race. *See Cariddi v. Kansas City Chiefs Football Club, Inc.,* 568 F.2d 87 (8th Cir.1977). This finding is not clearly erroneous. *See Wagh, supra,* 705 F.2d at 1021.

We have studied appellant's remaining arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.