763 F.2d 979
 45 Fair Empl.Prac.Cas. 651,
37 Empl. Prac. Dec. P 35,371
Johnny JONES and Huey Davis, III, et al., Appellees/Cross-Appellants,
v.
Terrell Don HUTTO, Individually and as State Corrections
Commissioner, A.L. Lockhart, Individually and as
Superintendent of the Arkansas Department of
Corrections--Cummins Unit, Jerry Campbell, Individually and
as Assistant Superintendent of the Department of
Corrections--Cummins Unit, Marshall N. Rush, W.L. Curry,
Lynn Wade, Thomas Worthen and Richard Griffin, Individually
and as members of the Board of Correction of the Arkansas
Department of Corrections, Appellants/Cross-Appellees.
 Nos. 83-2320, 83-2370.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 10, 1985.
Decided June 5, 1985.
 
 Jeffrey A. Bell, Asst. Atty. Gen., Little Rock, Ark., for appellants/cross-appellees.
 Ronald L. Ellis, New York City, for appellees/cross-appellants.
 Before ROSS and JOHN R. GIBSON, Circuit Judges, and COLLINSON*, District Judge.
 ROSS, Circuit Judge.
 
 
 1
 This case comes before the court on appeal by the Arkansas Department of Corrections (hereinafter ADC) from the district court's[1] finding of liability in an employment discrimination class action suit filed by two former ADC employees. Jurisdiction is premised on 28 U.S.C. Sec. 1291. For the reasons stated herein we affirm.
 
 FACTS
 
 2
 In May, 1974, two former employees of the ADC filed this lawsuit against the ADC alleging that the Department unlawfully discriminated against blacks in hiring, placement, promotions, and other employment practices. In January, 1976, the plaintiffs sought to have the case certified as a class action. By an order dated January 18, 1982, the district court certified the class as follows:All Black persons who have been employed by the defendant Department of Corrections at any time from May 8, 1971 to the date of the commencement of the trial, who are or have been limited, classified, restricted, discharged or discriminated against by the defendants with respect to promotions, assignments, training or who have been otherwise deprived of employment opportunities related to said factors because of their race or color.
 
 
 3
 Jones v. Hutto, No. PB-74-C-173 (E.D.Ark. January 18, 1982) (Order).[2]
 
 
 4
 After extensive discovery, trial commenced on March 29, 1982, and the case was tried over a period of fifteen days. The record in this case is voluminous, containing almost 4,000 pages of transcript, several hundred exhibits, as well as depositions. On August 29, 1983, the district court issued a cogent opinion which copiously analyzed the abundant evidence presented in this case. The court discerned that the ADC had unlawfully discriminated against blacks in placement, promotion, and other practices, but held there was no unlawful discrimination in the ADC's hiring practices. This appeal and cross-appeal followed.
 
 ISSUES
 A. Appeal
 On appeal the ADC raises three issues:
 
 5
 1. Whether the court abused its discretion by failing to decertify or narrow the class;
 
 
 6
 2. Whether the court was clearly erroneous in its ultimate finding of discrimination; and
 
 
 7
 3. Whether the court applied the correct legal standard to the evidence in this case.
 
 B. Cross-Appeal
 
 8
 In their cross-appeal the plaintiffs claim that the district court erred by failing to include black applicants who were denied employment in the class which was certified.
 
 DISCUSSION
 A. Class Certification
 
 9
 The appellants claim that the district court should have held a hearing to determine whether the plaintiffs' claims were sufficiently similar to those of the class members, and to limit the scope of the class to include "only non-supervisory security officers employed at the Cummins Unit during the term of plaintiffs' employment, who claim the same type of discrimination * * *." Appellants' Brief at 8. The cross-appellants claim the court should have included applicants in the class. We reject both claims.
 
 
 10
 The certification of a class under Rule 23 of the Federal Rules of Civil Procedure may be overturned if the district court abused its discretion in so certifying the class. See Shapiro v. Midwest Rubber Reclaiming Co., 626 F.2d 63, 71 (8th Cir.1980). Nothing in the record in this case indicates that the court abused its discretion in certifying the class as it did. Furthermore, the district court had sufficient material before it to determine the nature of the allegations, and rule on compliance with Rule 23, without holding a formal evidentiary hearing. See Walker v. World Tire Corp., 563 F.2d 918, 921 (8th Cir.1977). Finally, while the evidence supporting the finding of liability may have been less substantial with respect to some of the ADC facilities than others, that does not support a finding that the class was overbroad. At the remedial phase of this lawsuit the district court can cure any overbroadness of the class which might exist by carefully scrutinizing the evidence then presented in light of the evidence already adduced, and tailoring the remedy such that only those harmed by the discriminatory practices will be compensated.B. Substantive Finding of Discrimination
 
 
 11
 The appellants claim that the district court erred in its factual findings which were relied upon to support the ultimate finding of liability. To support their position the ADC discusses at length the evidence in the record which demonstrates that certain black individuals were in fact promoted. In our opinion, the fact that not every black was discriminated against, or that there were exceptions, does not militate against the district court's finding of liability in this case. See Bell v. Bolger, 708 F.2d 1312, 1318 (8th Cir.1983). The district court rejected this argument on the same basis as we reject it:
 
 
 12
 The defendants attempted to demonstrate that blacks have progressed in the Department of Correction and that they are not underrepresented in supervisory positions. First, an employer cannot respond to a classwide showing of exclusion by identifying a few blacks who progressed in the system. The plaintiffs have readily conceded that this is not a situation where no black had ever been promoted. Rather, the discrimination lies not in total exclusion but rather in the Department's disproportionate allocation of promotions to whites. [That] * * * blacks * * * have progressed through the system hardly demonstrate[s] that no discrimination has existed.
 
 
 13
 Jones v. Hutto, No. PB-74-173, Slip op. at 27 (E.D.Ark. August 30, 1983).
 
 
 14
 In this case both parties had the opportunity to present evidence to the district court regarding their respective positions. The district court had the opportunity to observe the demeanor of the witnesses and weigh the conflicting evidence. There is substantial evidence in the record to support the court's factual determinations which formed the basis for the finding of liability. The Supreme Court recently reaffirmed that the clearly erroneous standard applies in cases such as this, see Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985), and the record before us establishes that the district court's findings are not clearly erroneous. Id. See also Tolliver v. Yeargan, 728 F.2d 1076 (8th Cir.1984).[3]
 
 C. Proper Legal Standard
 
 15
 The ADC's final allegation is that the district court erroneously based its finding of liability as to the class on a disparate impact model while the testimony raised issues of disparate treatment.
 
 
 16
 As to the named plaintiffs' claims of discrimination, the court clearly employed the disparate treatment analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). It is equally clear that the court employed the disparate impact model of analysis established in Griggs v. Duke Power Co., 401 U.S. 424, 431-32, 91 S.Ct. 849, 853-54, 28 L.Ed.2d 158 (1971), to the class claim in this case. This, however, was not error.
 
 
 17
 This case presented what is commonly referred to as an "adverse impact 'excessive subjectivity' case", where an employer's excessively subjective selection process results in an adverse impact upon a protected group. See Schlei & Grossman, Employment Discrimination Law 1288 (2d ed. 1983). "However characterized, disparate treatment 'pattern and practice' cases are factually and analytically indistinguishable from adverse impact 'excessive subjectivity' cases." Id. (footnotes omitted). As the evidence sufficiently supported both theories of liability in this case, liability could be premised on either theory. See generally Kirby v. Colony Furniture Co., 613 F.2d 696, 702 & 705 (8th Cir.1980).
 
 
 18
 As the appellants acknowledge, in addition to examining the specific disparate treatment claims of the named plaintiffs, the court received substantial testimony from other witnesses as to the "assignment of blacks to lease desirable jobs; mistreatment and verbal abuse by white supervisors; arbitrary terminations of blacks for reasons for which whites are not terminated; submission of only white applicants to QRC and Legislative Council; subjective denials of promotions due to favoritism toward white applicants; and a multitude of other intentional acts of discrimination." Appellant's Brief at 10 (emphasis added). Additionally, however, the court also relied on impact-type evidence to support his finding that the otherwise "neutral" subjective promotional policies of the ADC adversely affected blacks.[4] Specifically, the court found:
 
 
 19
 Commissioner Lockhart also enumerated his criteria in evaluating employees for promotions: a person who is energetic, a person who can adapt to the institutional environment, a person who will go by policy and procedure, a person who will devote lots of time to the job, a person who is willing to learn and listen, a person who can be depended on in a crisis situation, a person who shows maturity with staff and inmates, a person you can trust in a time of trouble, a person you can depend on to aid a fellow staff person, and a person who would perform in a professional manner. Mr. Lockhart was not able to explain how these personality traits could be measured objectively, but indicated that you could observe these qualities by working with an individual.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 In summary, the administrators and Wardens who controlled the promotion process were allowed to make subjective judgments and to bring to their selection their own personal philosophies concerning corrections. This has had a disparate impact upon blacks.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 During the relevant time period, the defendants have used a variety of procedures available under state personnel guidelines to disproportionately benefit whites. The defendants followed the correct procedures but this does not insulate them from liability. By use of these procedures, opportunities were given to whites that were not given to blacks. In addition to the use of the substitution requests, the department brought in a number of employees at advanced steps. These employees were processed in accordance with state personnel procedures. In 1979, Commissioner Housewright made more than 25 such requests for individuals in grades 15 and above. Not one of those individuals was black.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 The result of the defendants' practices is that white employees were generally hired into the department at higher grades than black employees. The evidence shows that for the entire period from 1973 to 1979 no black person was hired into the department above grade level 19. Black employees comprised only 5.4% of the employees hired into grade 16 and above and only 20.4% of those hired into grade 12 and above. More than 23% of all white males were hired into grade 12 and above while just under 8% of black males were hired into grade 12 and above. There can be no equal opportunity in employment when only whites are considered for either qualifications substitutions or advanced step placement.
 
 
 29
 These employment practices are underscored by the evidence that there are several positions at the Department which have never been held by a black.
 
 
 30
 Jones v. Hutto, No. PB-74-173, Slip op. at 21-24 (E.D.Ark. August 30, 1983). Our reading of the record is consistent with the district court's. The evidence in this case clearly establishes that the subjective promotion practices had an adverse impact upon blacks. Furthermore, the neutral state personnel guidelines were employed in a manner that produced disparate impact upon black ADC employees. Accordingly, we do not believe the court erred in its application of the law to the evidence in this case.
 
 CONCLUSION
 
 31
 We have examined the appellants' remaining arguments in this case and find them to be without merit. We have also carefully examined the cross-appellants' claim that black applicants who were not hired should have been included in the certified class and do not find this to be an abuse of the trial court's discretion. Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE WILLIAM R. COLLINSON, Senior Judge, United States District Court for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 The Honorable Oren Harris, Senior United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 The district court subsequently amended the provision "to the date of the commencement of the trial," to read: "to the date of judgment, if any, entered on the question of liability." Jones v. Hutto, No. PB-74-C-173 (E.D.Ark. March 22, 1982) (Order)
 
 
 [3]
 The ADC also takes issue with the district court's discussion of past litigation involving segregation of inmates and prison conditions in general at the ADC. See Finney v. Mabry, 534 F.Supp. 1026 (E.D.Ark.1982); Finney v. Mabry, 528 F.Supp. 567 (E.D.Ark.1981); Finney v. Mabry, 458 F.Supp. 720 (E.D.Ark.1978); Finney v. Hutto, 410 F.Supp. 251 (E.D.Ark.1976) aff'd 548 F.2d 740 (8th Cir.1977); Finney v. Hutto, 505 F.2d 194 (8th Cir.1974); Holt v. Hutto, 363 F.Supp. 194 (E.D.Ark.1973); Holt v. Sarver, 309 F.Supp. 362 (E.D.Ark.1970), aff'd in part, rev'd in part, 442 F.2d 304 (8th Cir.1971); Holt v. Sarver, 300 F.Supp. 825 (E.D.Ark.1969). Those prior decisions do not appear to have formed the basis of the district court's decision, but they may have served as a valuable backdrop against which the ADC's employment policies could be viewed. This is not impermissible
 
 
 [4]
 "In the excessive subjectivity case, plaintiffs do not challenge a specific employment practice but allege that the employer's total selection process (which is analyzed as if it were a test or objective criterion ) allows excessive subjectivity which results in an adverse impact upon a protected group." Schlei & Grossman Employment Discrimination Law 1288 (2d ed. 1983) (emphasis added)