628 F.Supp. 564 (1986)
Alston A. EMMANUEL, Plaintiff,
v.
John O. MARSH, Jr., Secretary of the Army, et al., Defendants.
No. 83-55C(5).
United States District Court, E.D. Missouri.
January 31, 1986.
Doris Gregory Black, St. Louis, Mo., Edward L. Welch, Edwardsville, Ill., for plaintiff.
Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendants.

*565 MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This civil case concerns allegations that the Department of The Army discriminated against Alston Emmanuel on the basis of race in an employment decision. Emmanuel has brought suit against the defendant, General John O. Marsh, Jr., Secretary of the Army, in his official capacity, pursuant to Title VII of the Civil Rights Act of 1964, as amended by § 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16(a). Emmanuel challenges the Army's promotion in 1980 of a white male, John Snyder, rather than the plaintiff to the position of Supervisory Packaging Specialist, GS-2032-12. Plaintiff challenges the validity of both the actual promotion, and the process by which the Army compiled the information on which it based its decision. While the complaint alleges discrimination on the basis of both race and sex, plaintiff, in his pretrial submission and in the presentation of his case, abandoned his charge of sex discrimination. Emmanuel seeks an award of backpay, injunctive relief of reinstatement and promotion, and declaratory relief.
Plaintiff originally brought this suit as a class action, but before the certification hearing he withdrew as the proposed class representative. One of plaintiff's advisers, Leon Paige, was then substituted as the proposed representative. The Court on January 9, 1985, refused to certify a class and dismissed Paige from this action after finding that he had no individual fully exhausted Title VII claim, and that the proposed class did not meet the numerosity requirement of Fed.R.Civ.P. 23(a)(1). This decision was appealed to the United States Court of Appeals for the Eighth Circuit. On June 10, 1985, 767 F.2d 929, the Eighth Circuit dismissed the appeal for lack of jurisdiction since the trial court had not entered a final judgment in this cause as required by 28 U.S.C. § 1291. Leon Paige remains in this lawsuit only for the purpose of review by the Eighth Circuit of this Court's decision not to certify a class.
The parties tried this case to the Court and all parties have filed proposed findings of fact and conclusions of law.

FINDINGS OF FACT
Alston Emmanuel is a sixty-seven year old unemployed, black-American male who, at the time of trial, resided in Atlanta, Georgia. He last worked in 1983 at TSAR-COM (Troop Support and Aviation Material Readiness Command), a division of the United States Army in St. Louis, Missouri. From 1963 until 1967, plaintiff worked for the Army as a warehouse supervisor. From 1967 until 1975, he worked for AVSCOM (Army Aviation System Command) as a packaging specialist at the GS-11 grade. In 1975, Emmanuel applied for a promotion to Senior Staff Packing Specialist, GS-2032-12; however, after an evaluation process the Army gave this position to John Snyder, a white male.
The plaintiff challenged this decision and the United States Army Civilian Appellate Review Office (USACARO) determined that the Army and, in particular, Mervin Edwards, the Chief Packaging Officer at AVSCOM, and John Greenwall had discriminated against plaintiff on the basis of race in its selection of Snyder. As a result, plaintiff received a retroactive promotion to the position of Senior Staff Packing Specialist and backpay at the GS-12 level. Snyder, whom the Army had originally promoted, received a transfer to another command.
Although he obtained the promotion to the GS-12 level in 1975, Emmanuel continued to work under the supervision of Mervin Edwards, one of the persons whom USACARO found had discriminated against him in the 1975 promotion decision. In 1976, plaintiff completed some training courses and a six-week training session. He also received a certificate of achievement on February 20, 1976, for saving the federal government $3,265,000.00 and another certificate on January 4, 1977, for saving the government $18,500.00. As a general rule, certificates of achievement are considered relatively minor awards. *566 Although an employee has a continuing duty to ensure that his Qualifications Record-Civilian Personnel (DA Form 2302) reflects the most up-to-date information concerning his background and service to the government, Emmanuel did not arrange for inclusion on his form of his achievements during the 1975-80 period.
After his transfer to another command in 1975, John Snyder continued working for the Army in the packaging area. In 1978, he received a Sustained Performance Award which, apparently, is a significant and prestigious honor. Snyder received this award at the instigation of Mervin Edwards even though Edwards was no longer his supervisor. A supervisor can nominate an employee for a Sustained Performance Award for a given time period even if during portions of that period he no longer supervises the employee. John Greenwall, acting in a temporary capacity as a supervisor, also approved the issuance of this award.
Emmanuel testified that between 1975 and 1980, he supervised five to seven persons while Snyder supervised only one person. Plaintiff conceded on cross-examination, though, that he served as supervisor by temporary appointment only, and not by title. Plaintiff also testified that he represented the Army on a task force of packaging specialists created by the Armed Services to consider the possibility of standardizing packaging procedures. Snyder did not serve on this task force.
Emmanuel contends that various persons groomed Snyder for the 1980 appointment by according him favorable treatment as to awards and performance ratings while Emmanuel received less favorable treatment. John Greenwall, a white male, whom USA-CARO implicated in its review of the 1975 promotion decision, had some responsibility for the SKAP (Skills, Knowledge, Ability and Personal characteristics) ratings Snyder received, while Mervin Edwards as Emmanuel's immediate supervisor, had responsibility for his initial ratings.
Plaintiff contends that the subjective nature of the rating system enabled these persons to discriminate against him. The evidence at trial, though, does not support this criticism. Army regulations limit to B's the marks an employee and his supervisor can award the employee. Only an independent reviewer can increase an employee's ratings to A's. While Emmanuel and Snyder each received all B's in the initial ratings they gave themselves and then received comparable marks from their immediate supervisors, an independent reviewer, Col. Michael J. Pepe, upgraded Snyder's marks to A's in five categories, while Emmanuel's marks remained at their original level of ten B's and one C. Col. Pepe did not know the plaintiff, or Edwards, or Greenwall. He upgraded Snyder's marks because he thought the employee deserved better ratings.
Unlike the person who reviewed Emmanuel's marks, though, Col. Pepe had the benefit of current information when he examined Snyder's ratings. Although Army civilian employees usually update their SKAP ratings each July, Snyder updated his marks in February, 1980. Plaintiff claims that someone told Snyder about an impending vacancy for which he might be eligible and that Snyder received extra, inappropriate help in updating his scores. Snyder testified that he became aware of the opening at the GS-13 level, and decided to provide the Army Civilian Personnel Center (CIVPERCEN) with updated scores. Plaintiff does not deny that Snyder had the right to supply the Army personnel agency with up-to-date information at any time or that while he also had this right, he failed to take advantage of it. In fact, by way of a letter on March 21, 1979, plaintiff requested that his 1978 SKAP evaluation remain valid for 1979. He knowingly bypassed an opportunity to provide CIVPERCEN with more current information.
In 1980, Lt. Col. Robert G. Straeb, Chief of the Distribution and Transportation Division at TSARCOM, began looking for someone to fill the position occupied by Mervin Edwards, Branch Chief and Supervisory Packaging Specialist at the GS-13 level. The position became available because of *567 Edwards' imminent retirement. As a temporary measure, Lt. Col. Straeb appointed the plaintiff to the available position for the period April 5, 1980, until May 5, 1980. Pursuant to proper procedure, Straeb on December 10, 1980, filed a Standard Form 52, Number X-XXXX-XX with CIVPERCEN, requesting a list of persons in the St Louis area qualified for the position of Supervisory Packaging Specialist, GS-2032-13. On February 13, 1980, CIVPERCEN provided TSARCOM with a list of four qualified persons, including Emmanuel and Snyder. The other two persons on the list were white males.
Lt. Col. Straeb conducted a comparative analysis of the applicants, considering only their SKAP criteria, awards, education, training and experience. Obviously, since the plaintiff had not updated his Form 2302, Lt. Col. Straeb could not consider the training, education and awards Emmanuel received in 1976 and 1977. Straeb conducted interviews of the persons on the CIVPERCEN list, but did so only to provide the applicants with information about the selection process, and not to seek additional information from the applicants personally.
On April 17, 1980, Straeb selected Snyder for the available position on the basis of his superior SKAP scores, experience, training and awards. Straeb found Snyder's SKAP scores especially superior to plaintiff's in the technical areas, and considered the Sustained Performance Award Snyder had received particularly persuasive.
Gen. Leo J. Pigaty, Deputy Commanding General of TSARCOM in St. Louis, was Director of Material Management at TSARCOM in 1980 and Lt. Col. Straeb's supervisor. He conducted an independent review of Straeb's decision to promote Snyder, focusing specifically on information in the applicants' 2302 forms. Gen. Pigaty determined that Snyder was clearly superior to Emmanuel in terms of experience, awards and training and found his promotion appropriate. He, too, was particularly impressed with the Sustained Performance Award Snyder received. Gen. Pigaty found that the contrast between the abilities of Emmanuel and Snyder was quite large and, concomitantly, the decision to promote Snyder was a relatively easy decision to make. Again, Gen. Pigaty did not know of the awards and training that plaintiff had declined to include on his form 2302.
After receiving notification that Lt. Col. Straeb had selected Snyder for the GS-13 position, Emmanuel filed a formal complaint with USACARO on November 14, 1980, alleging that the Army had discriminated against him on the basis of race. In an affidavit plaintiff presented to the agency, he clearly expressed his intent to withdraw his charge that various persons had retaliated against him for his 1975 employment discrimination complaint.[1] After conducting an investigation, USACARO determined that plaintiff's discrimination complaint was valid and issued a finding of probable cause. The Review Office found that Lt. Col. Straeb should have given Emmanuel some credit for the one month experience he gained at the GS-13 level by virtue of his temporary appointment, and more credit for his supervisory duties at the GS-12 level. It also found that plaintiff had a higher level of formal education than Snyder. USACARO considered these findings within the context of the TSARCOM EEO Affirmative Action Program Plan for Fiscal Year 1980, and recommended that Emmanuel receive a promotion to the position of supervisory Packaging *568 Specialist retroactive to May 18, 1980.
On April 8, 1982, Gen. Emil L. Konopnicki informed the plaintiff that the Army had rejected USACARO's recommendation. The Army disagreed with the reviewing agency's depiction of the relative qualifications of Snyder and Emmanuel, believing that USACARO had placed insufficient weight on Snyder's superior SKAP scores. Also, the Army found the USACARO report incorrectly summarized the two applicants' experience since the records demonstrated that Snyder had seven more years of experience than Emmanuel and that his experience was more closely related to the job requirements of the available position. In addition, the Army took issue with the report's depiction of the EEO statistics. After carefully reviewing the testimony and documentary evidence presented at trial, the Court finds Gen. Konopnicki's view of the applicants' respective backgrounds more in tune with the evidence than the interpretation USACARO offered.
Leon Paige testified that TSARCOM employs a disproportionately small number of black males at the higher GS levels. He also testified that reviewing officers never upgrade the SKAP marks for these employees, but admitted that he did not know whether supervisors upgrade the SKAP scores for the white employees in the GS-12 grade. General Pigaty testified that the higher GS levels at TSARCOM contain a balance of blacks and other minorities.

CONCLUSIONS OF LAW
The Court has subject matter jurisdiction over this federal question pursuant to 42 U.S.C. § 2000e and 28 U.S.C. § 1331(a). Venue is proper in this district. 42 U.S.C. § 2000e-5(f)(3).
The Court reserved its ruling on defendant's motion for partial summary judgment for consideration with the case. The Army contends that plaintiff changed the theory of his case shortly before trial from one of racial discrimination to one of retaliatory treatment for bringing the 1975 EEO action. The Army believes this shift is improper since plaintiff specifically withdrew the retaliation charge from his EEO complaint, and did not plead retaliatory treatment in his civil complaint.
Plaintiff submitted evidence at trial that he intended to withdraw his retaliation allegations as to Lt. Col. Straeb only, and not as to Edwards and Greenwall. The actual language in the affidavit, though, does not support plaintiff's contention. It demonstrates in no uncertain terms that Emmanuel withdrew all allegations of retaliation from the USACARO proceedings. Consequently, plaintiff has not exhausted his administrative remedies for any complaints he may have under 42 U.S.C. § 2000e-3(a) that the Army retaliated against him for his 1975 EEO filing. Administrative exhaustion is a jurisdictional requirement for a Title VII action against the federal government. Brown v. GSA, 425 U.S. 820, 824-35, 96 S.Ct. 1961, 1963-69, 48 L.Ed.2d 402 (1976). Plaintiff's failure to pursue his administrative remedies and his failure to include an allegation of retaliatory treatment in his civil complaint preclude this Court from treating this action as one for relief from an unfair and retaliatory employment practice. The Court, though, will deny defendant's motion for partial summary judgment because plaintiff's failure to maintain any action he might have had under § 2000e-3(a) for retaliatory treatment has no relevance as to whether the Court should grant a summary judgment on the complaint as pled. Rather, any evidence that the Army retaliated against plaintiff for his 1975 EEO filing falls outside the scope of the pleadings. The only relevant evidence is that which tends to show the Army discriminated against defendant on the basis of race. Since the plaintiff appears to have tried the case on a retaliation theory, the evidence presented does not mesh well with the complaint's allegation of racial discrimination.
When analyzing a Title VII claim, a Court can use either the disparate impact model or the disparate treatment model. See Teamsters v. U.S., 431 U.S. 324, 335-37, *569 97 S.Ct. 1843, 1854-55, 52 L.Ed.2d 396 (1976) (footnote 15). Plaintiff contends that both models have applicability here. However, in McRae v. General Dynamics Corp., 774 F.2d 1171 (8th Cir.1985), an employee challenged a corporate promotions policy in which a reviewer considered a number of factors in rating applicants, but which did not involve the use of a facially neutral testing device. In finding the disparate impact model inapplicable, the Eighth Circuit notes
This case involves no facially neutral test of employment. Rather, it is the subjectivity of the promotional procedure that is being challenged. A subjective personnel procedure, by definition, functions not solely through facially objective measures of ability, but employs judgment and intuition in conjunction with objective measures, such as education and demonstrated skills, to achieve its ends. Here, there was no one hoop, such as a minimum education requirement, through which everyone had to pass; rather, the totality of a candidate's qualifications were analyzed in making decisions. Thus, the District Court properly analyzed this case under the disparate treatment model of liability.
Slip Op. at 4. Since Emmanuel challenges a subjective promotions and ratings system, and not a facially neutral objective test, the Court will examine the propriety of the Army's actions within the context of the disparate treatment model only.
The Supreme Court has developed a three-step test by which courts should analyze most allegations of disparate treatment. See McDonnell Douglas v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981); and U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983). The plaintiff must first establish a prima facie case of racial discrimination by showing that he is a member of a racial minority, that he applied for and was qualified for an available job, and that despite his qualifications, the employer rejected him for a white candidate. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. The burden of production then shifts to the employer, who must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. The leading case on the employer's burden of production is Burdine, where the Supreme Court notes
It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.
450 U.S. at 254-55, 101 S.Ct. at 1094. (footnotes omitted). If the employer adequately meets his burden during the intermediate stage of the McDonnell Douglas analysis, the burden shifts back to the plaintiff to demonstrate that the employer's ostensible reasons for refusing to promote him are merely a pretext for impermissible racial discrimination. McDonnell Douglas, 411 U.S. at 803-04, 93 S.Ct. at 1824-25.
The Court reserved its ruling on defendant's motion for a directed verdict for consideration with the case in chief and now holds that plaintiff established a prima facie case of racial discrimination. The Army filled an available position with a white male even though Emmanuel, a black male, was qualified. The Army has also met its burden since it articulated convincing reasons why it chose Snyder for the promotion. Defendants submitted evidence that tends to support the decisions made by Lt. Col. Straeb and General Pigaty. As a consequence, the Court must now determine whether the reasons the Army offers were a pretext for racial discrimination.
Plaintiff offered no credible evidence that racial motivations played any part in the ultimate decisions made by Lt. Col. *570 Straeb or Gen. Pigaty. Further, the sketchy, incomplete and uninterpreted statistical evidence that plaintiff submitted proves little. See Harper v. Trans World Airlines, 525 F.2d 409, 412 (8th Cir.1975). However, if racially discriminatory motives affected the development and compilation of information on which Straeb and Pigaty based their decision, then the promotion of Snyder is suspect even though the decision-makers acted with complete integrity. Since these two men based their decision on the two applicants' SKAP ratings, education, training and awards, the Court must determine whether an impermissible racial animus affected the development of the employment records of Snyder and Emmanuel in these areas.
The plaintiff does not allege that TSAR-COM employees had any impact on the applicants' respective levels of education and training. Further, the presence of procedural checks within the systems TSAR-COM used to develop SKAP ratings and to make awards rebut the plaintiff's suggestion that an impermissible racial animus affected many of the actions taken by TSARCOM supervisors. Col. Pepe, the independent reviewing officer who upgraded Snyder's SKAP ratings, gave credible testimony that he improved the employee ratings solely on the basis of merit. Other evidence at the trial suggests that Snyder's fellow workers view him as much more qualified and competent than Emmanuel in the area of packaging policy.
Plaintiff contends that Snyder received the Sustained Performance Award at the instigation of Mervin Edwards and John Greenwall, persons whom USACARO determined has discriminated against the plaintiff in 1975. While Edwards certainly knew that he would eventually retire, it strains reasonableness for the plaintiff to suggest that Edwards arranged for Snyder to receive an award that would help him obtain a promotion two years before the position became available. Edwards testified credibly at trial that Snyder's superior performance, and no other reason, induced him to nominate the employee for the Sustained Performance Award.
Further, the credible testimony at trial demonstrated no impropriety in the manner in which Snyder provided CIVPERCEN with updated information for his form 2302. More importantly, though, Emmanuel can blame only himself for his failure to provide CIVPERCEN with current information.
The plaintiff's claim that Edwards gave him low SKAP marks, that Greenwall gave Snyder high SKAP marks, and that the two conspired to procure a high level award for Snyder is more appropriately categorized as a retaliation claim, which this Court cannot consider for reasons discussed above. The evidence plaintiff presented simply does not establish by a preponderance of the credible evidence the charge of racial discrimination alleged in his complaint.
Accordingly,
IT IS HEREBY ORDERED that judgment be and is entered in this cause in favor of the defendant and against the plaintiff. This judgment includes an award of all recoverable costs of suit.
NOTES
[1] Q: Is there any additional information you wish to provide at this time?

A: Yes. In my formal complaint of discrimination I raised the allegation of reprisal. After consultation with my representative, Mr. Leon Paige, I do not wish to pursue this issue. Again, it is my contention that if LTC Straeb had considered my accomplishments (illegible) as he did consider those of Mr. Snyder, it is my belief that my experience as a Packaging Specialist, my training and my awards, as well as my education, I would have been selected for promotion to this position as I believe I was better qualified in overall factors relied on in the selection action.
Affidavit of Alston A. Emmanuel, October 1, 1981.