828 F.2d 438
 45 Fair Empl.Prac.Cas. 666,
44 Empl. Prac. Dec. P 37,348, 9 Fed.R.Serv.3d 166
 Alston A. EMANUEL and Leon Paige, Appellants,
v.
John O. MARSH, Jr., Secretary of the Army, in his official
capacity; Department of the Army, HQ U.S. Army
Troop Support and Aviation Material
Readiness Command, Appellees.
 No. 86-1282.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 13, 1987.
Decided Sept. 2, 1987.
 
 Edward L. Welch, Edwardsville, Ill., for appellants.
 Robert H. Garfield, St. Louis, Mo., for appellees.
 Before HEANEY, McMILLIAN and FAGG, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Alston A. Emanuel and Leon Paige appeal from a final judgment entered in the District Court[1] for the Eastern District of Missouri in favor of John O. Marsh, Jr., Secretary of the Army (Army) in an action brought under 42 U.S.C. Sec. 2000e (Title VII). Emanuel v. Marsh, 628 F.Supp. 564 (E.D.Mo.1986) (1986 Memorandum and Order). Emanuel alleged that he and other black male civilian employees at the United States Army Troop Support and Aviation Materiel Readiness Command (TSARCOM) were denied promotions or deterred from applying for promotions because of racial discrimination. During the pendency of the lawsuit, Paige was substituted as class representative with the permission of the district court. Paige appeals from the district court's order denying class certification. Emanuel v. Marsh, No. 85-55C(5) (E.D.Mo. Jan. 9, 1985) (Certification Memorandum and Order).
 
 
 2
 For reversal, Emanuel argues that (1) the Army is estopped from litigating the issue of his qualifications relative to those of John Snyder, (2) the district court erred in refusing to apply a disparate impact analysis to his Title VII claim, and (3) the district court's findings are clearly erroneous. Paige argues that the district court abused its discretion in denying class certification. For the reasons discussed below, we affirm the judgment of the district court.
 
 Background
 
 3
 Emanuel, a black male, was a civilian employee of the Department of the Army, employed as a packaging specialist at TSARCOM in St. Louis, Missouri. In 1975 he sought promotion to the position of Senior Staff Packaging Specialist at a GS-12 grade. The Army initially awarded the position to Snyder, a white male, who was also a packaging specialist. Emanuel subsequently filed a complaint of racial discrimination with the United States Army Civilian Appellate Review Agency (USACARA), an independent agency with the responsibility for investigating civilian employees' complaints of employment discrimination by the Army. USACARA investigated and concluded that Mervin Edwards, Emanuel's supervisor, and John Greenwell, Edwards's supervisor, had discriminated against Emanuel because of his race in denying the promotion. The Army accepted USACARA's recommendation and awarded Emanuel a retroactive promotion with backpay. Emanuel continued to be supervised by Edwards after the promotion. Snyder retained his promotion and was transferred to another Army command in the St. Louis area where he continued to work in the packaging area.
 
 
 4
 Both Snyder and Emanuel did well in their careers after 1975. Emanuel completed several job-related training courses. He also received a certificate of achievement on February 20, 1976, for saving the federal government $3,265,000, and another certificate of achievement on January 4, 1977, for saving the government $18,500. Certificates of achievement are considered relatively minor awards.
 
 
 5
 In 1978 Snyder received a Sustained Superior Performance Award, which is considered a significant and prestigious award. He was nominated for the award by Edwards who had been, but was not then, his supervisor. Greenwell, Edwards's supervisor, approved the award.
 
 
 6
 In April 1980, Edwards, then Chief of the Packaging Branch, Distribution and Transportation Division, retired. After Edwards retired, Emanuel was temporarily assigned for 30 days to the GS-13 position.
 
 
 7
 According to Army regulations, Edwards's position, a GS-13 packaging specialist, was to be filled from a list of qualified applicants supplied by the United States Army Civilian Personnel Center (CIVPERCEN) in Alexandria, Virginia. The list of qualified applicants supplied by CIVPERCEN was compiled under a career program system in which applicants submit statements of their qualifications and their interests together with ratings of their skills, knowledge, ability, and personal characteristics (SKAP). SKAP reports are usually updated annually in July, although an employee has the right to update the SKAP report at any time. Employees were also free to forego submitting an updated SKAP for one year and to continue to use the previous year's SKAP. In preparing a SKAP, the employee and his or her immediate supervisor rate the employee's performance in key areas. Neither the employee nor the immediate supervisor may give a rating higher than a "B." A higher level supervisory officer, called a reviewing officer, may upgrade an employee's SKAP ratings to an "A." A panel convened by CIVPERCEN reviews the "SKAP packages." Applicants found to be "best qualified" for positions are automatically referred to the selecting officer for consideration for those positions.
 
 
 8
 Emanuel did not update his SKAP report in 1979, but requested that his 1978 SKAP report remain valid for the next year. He testified at trial that Edwards continued as his supervisor after the 1975 promotion controversy and he believed that Edwards would give him unfairly low ratings. Emanuel and Edwards had disagreed on Emanuel's 1978 SKAP evaluation. Emanuel filed a grievance concerning the 1978 SKAP report; as a result his rating was raised to a higher level.
 
 
 9
 On the day the Army requested an applicant register from CIVPERCEN for the GS-13 supervisory position, Snyder did not have a SKAP report on file that would have permitted him to be included in the referral list. The next day, however, Snyder completed an updated SKAP report. Snyder could not recall at trial how he had learned about the vacancy in order to update his SKAP with such dispatch. Col. Michael Pepe, Snyder's reviewing officer, upgraded several of Snyder's ratings from "B" to "A" in key areas. Pepe testified that he upgraded the ratings because of Snyder's performance; Pepe did not know Emanuel, Edwards or Greenwell.
 
 
 10
 Lt. Col. Robert Straeb was the selecting official for the GS-13 supervisory position. He received an applicant register which contained four names--Emanuel, Snyder, and two other white males. Straeb testified that he compared each candidate's SKAP ratings, awards, education, training and experience. Straeb testified that Snyder's SKAP ratings were significantly superior to those of Emanuel. Snyder had "As" in five categories; the rest were "Bs." Emanuel had ten "Bs" and one "C." Straeb also testified that he was impressed by the Sustained Superior Performance Award which Snyder had received. In the areas of training and education, Straeb found Snyder and Emanuel to be roughly equal. Both had received their college training in the 1930s and 1940s. Emanuel's training and education received in 1976 and 1977 were not considered by Straeb because Emanuel failed to update his Form 2303 to reflect this additional training and education. Straeb also testified that he gave more weight to Snyder's past experience in packaging policy areas than to Emanuel's greater experience in supervision because of the requirements of the supervisory job. Straeb awarded the promotion to Snyder.
 
 
 11
 Emanuel filed a complaint of racial discrimination with USACARA. After an investigation, USACARA concluded that Emanuel had been discriminated against on the basis of his race. Specifically, USACARA concluded that Emanuel's qualifications had been improperly evaluated by the selecting official. The Army rejected this conclusion. Emanuel then filed this suit in federal district court seeking an order directing that he be promoted to the GS-13 supervisory position and awarded backpay.
 
 
 12
 Emanuel originally brought his action as a class action. When he retired and moved out of the St. Louis area, he withdrew as class representative and Paige, another black male TSARCOM civilian employee, was substituted. Paige testified at the class certification hearing that TSARCOM employs a disproportionately small number of black males at the higher GS levels. He also testified that in his experience reviewing officers never upgrade the SKAP ratings for black male employees. He admitted that he did not know whether reviewing officers regularly upgraded SKAP scores for white employees. Paige presented TSARCOM equal employment opportunity statistics in support of his claim that there was discrimination on the basis of race at TSARCOM. Paige also argued that the subjective nature of the SKAP rating system, which is the basis for promotion decisions, enables white supervisors to discriminate against black employees in awarding promotions.
 
 
 13
 The district court denied class certification on the basis that the proposed class failed to meet the "numerosity" requirement of Fed.R.Civ. 23. Certification Memorandum and Order at 2. The district court also dismissed Paige's individual claim, finding that he had no "individual fully exhausted Title VII claim." Id. at 1. Paige appealed the denial of the class certification to this court, but the appeal was dismissed for lack of jurisdiction because there was no final order. Emanuel v. Marsh, 767 F.2d 929 (8th Cir.1985). In the present appeal, Paige only challenges that part of the district court's order denying class certification.
 
 
 14
 On Emanuel's individual Title VII claim, the district court held that a prima facie case of racial discrimination had been established but concluded that the Army had rebutted the presumption of discrimination. 1986 Memorandum and Order, 628 F.Supp. at 570. The district court determined that the Army had articulated convincing non-discriminatory reasons in support of its decision to promote Snyder and that the reasons offered by the Army were not a pretext for racial discrimination. The district court entered judgment in favor of the Army. Id. Emanuel appeals from the judgment against him on the Title VII claim.
 
 Estoppel
 
 15
 Emanuel first contends that the Army should have been estopped from claiming that Snyder was better qualified in the areas of training, education and experience for the GS-13 supervisory position. Emanuel argues that the Army admitted in 1975 that he was better qualified than Snyder when it accepted USACARA's conclusion that Emanuel had been discriminated against on the basis of race in the competition against Snyder for the 1975 promotion. Emanuel argues that he relied on this admission and did not submit updated SKAP reports.
 
 
 16
 In Heckler v. Community Health Services, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), the Supreme Court set out the requirements for estoppel:
 
 
 17
 [[T]he party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his [or her] position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.
 
 
 18
 Id. at 59, 104 S.Ct. at 2223 (citation and footnotes omitted).
 
 
 19
 We hold that the elements of estoppel are not present in this case. First, there is no evidence of a factual misrepresentation. The Army's acceptance of USACARA's conclusion in 1975 that Emanuel was more qualified than Snyder at that time cannot reasonably be interpreted as a representation that Emanuel would be considered more qualified than Snyder for all future promotions. Nor has Emanuel shown that he justifiably relied on the 1975 decision. Both Emanuel and Snyder continued to work as packaging specialists in the five intervening years and it is unreasonable to assume that their qualifications would remain static. Because we have concluded that the traditional elements of estoppel are not present, we need not consider the related issue of when the government may be estopped.
 
 
 20
 Disparate Impact v. Disparate Treatment Anaylsis
 
 
 21
 The district court employed a disparate treatment analysis to decide Emanuel's Title VII claim challenging the Army's subjective evaluation and promotion system. The district court held that the disparate impact analysis was inappropriate because Emanuel was not challenging a facially neutral objective employment test. 1986 Memorandum Order and Opinion, 628 F.Supp. at 568-69. The district court primarily relied, in making this determination, on this court's decision in McRae v. General Dynamics Corp., 774 F.2d 1171 (8th Cir.1985).
 
 
 22
 Emanuel argues that his promotion claim should have been analyzed under the disparate impact theory, which does not require a showing of intentional discrimination. He relies on Paxton v. Union Nat'l Bank, 688 F.2d 552, 556 n. 3 (8th Cir.1982) (Paxton ) (citations omitted) cert. denied, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983), where this court observed in a footnote:
 
 
 23
 An argument can be made that the promotion class claims should have been decided under the discriminatory impact theory. [T]he plaintiffs proved that the racial composition of the bank's work force at most above-entry levels does not reflect the composition of available qualified persons in the relevant labor pool. The court could have concluded from this that the sum of the defendant's promotion methods, although not administered with a discriminatory intent, impacted more heavily on blacks in the bank's work force.
 
 
 24
 Emanuel argues that the Army's subjective promotional system is the facially neutral employment practice that implicates disparate impact analysis.
 
 
 25
 The Army responds that this court, in a case decided after Paxton, held that an attack on an employer's system of subjective decision-making must be analyzed under the disparate treatment and not the disparate impact model. Talley v. United States Postal Service, 720 F.2d 505, 506 (8th Cir.1983) (Talley ), cert. denied, 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984). In Talley a black female employee claimed that the subjective decision-making by a primarily white supervisory force disproportionately affected blacks and females. The district court held in Talley that the application of disparate impact analysis was inappropriate. Id. at 507. This court affirmed, relying on Harris v. Ford Motor Co., 651 F.2d 609 (8th Cir.1981) (Harris ). In Harris this court held that a subjective decision-making system cannot, standing alone, form the basis for a discriminatory impact claim. Id. at 611.
 
 
 26
 We hold that the district court properly applied a disparate treatment analysis to Emanuel's claim that he had been discriminated against as a result of subjective evaluation and promotion procedures. This court has held in several earlier cases that a disparate impact claim may not be based on subjective evaluation and promotion procedures. Talley, 720 F.2d at 506-07; Harris, 651 F.2d at 610. See McIntosh v. Weinberger, 810 F.2d 1411, 1427 (8th Cir.1987) (recognizing that the circuits are split and this court's holdings have been "less than clear" on whether disparate impact analysis may be applied to subjective hiring and promotion practices).[2] Emanuel's reliance on Paxton is misplaced. Both the district court and this court analyzed the claim in Paxton under the disparate treatment theory. This court merely observed in a footnote that an argument could be made that the promotion class claim should have been decided under the disparate impact theory and cited a Tenth Circuit case, Williams v. Colorado Springs, 641 F.2d 835, 839, 841 (10th Cir.1981), in support of this argument. Paxton did not hold, however, that a disparate impact claim could be based on subjective employment procedures.
 
 Finding of No Discrimination
 
 27
 Emanuel next contends that the district court clearly erred in finding that he had not been discriminated against on the basis of his race. Emanuel's challenge to the district court's factual findings focuses on the alleged involvement of Edwards and Greenwell in "grooming" Snyder for the 1980 promotion. Emanuel argues that the evidence shows that Edwards and Greenwell gave preferential treatment to Snyder in his evaluations and in recommendations for awards so that he would appear more qualified. Emanuel asserts that he, on the other hand, was given less favorable treatment and was denied awards that he would have received had he been white. For example, Emanuel contends that Edwards recommended Snyder for a Sustained Superior Performance Award, but did not recommend Emanuel for a Sustained Superior Performance Award or a monetary award even though he had saved the government over three million dollars. Emanuel also argues that Snyder was given "special accommodation" in updating his SKAP report in February 1980. According to Emanuel, Snyder's ratings were substantially raised by the reviewing officer and his updated SKAP report was submitted "in a hurry" and immediately after the supervisory vacancy was announced.
 
 
 28
 An appellate court may not set aside the factual findings of a district court unless the findings are clearly erroneous. Craft v. Metromedia, Inc., 766 F.2d 1205 (8th Cir.1985), cert. denied, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. at 1211-12, citing Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). "We may not duplicate the function of the district court by making our own determination of the facts and reversing if we believe we would have decided the case differently...." 766 F.2d at 1212 (citation omitted). The Supreme Court has cautioned:
 
 
 29
 [W]hen a trial judge's finding is based on his [or her] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.
 
 
 30
 Id. at 1212, citing Anderson v. City of Bessemer City, 470 U.S. at 574, 105 S.Ct. at 1512.
 
 
 31
 There was conflicting evidence in the present case concerning the manner in which Emanuel's and Snyder's job performance was evaluated and the relative qualifications of the two men for promotion to the GS-13 supervisory position. The district court could resolve this conflict only by choosing to believe some of the witnesses and not others. The district court concluded that Emanuel presented no credible evidence that Snyder's evaluation and promotion had been the result of racial discrimination. 1986 Memorandum Order and Opinion, 628 F.Supp. at 570. The district court found that the Army's witnesses, notably Edwards, were more credible. The district court stated that "it strains reasonableness for [Emanuel] to suggest that Edwards arranged for Snyder to receive an award that would help him obtain a promotion two years before the position became available." Id. Although we would perhaps reach a contrary finding on the same evidence, under the applicable standard of review, we cannot say that the district court clearly erred in finding that the Army did not discriminate against Emanuel in denying the promotion.
 
 
 32
 Emanuel next argues that the district court failed to properly consider evidence that the Army had disregarded its affirmative action plans in 1975 and 1980 when Snyder was selected for the promotion. This evidence was contained in the reports of USACARA that were introduced at trial. Emanuel relies on this court's decision in Craik v. Minnesota State University Board, 731 F.2d 465 (8th Cir.1984) (Craik ), where we held that the district court should have made a specific finding concerning non-compliance with an affirmative action plan. Id. at 472-73.
 
 
 33
 A district court is not required to make specific findings with respect to all the evidence presented to it. Craik, 731 F.2d at 472. Talley, 720 F.2d at 507. Craik held that in a case where compliance with an affirmative action plan is relevant to the question of discriminatory intent, the district court must consider it as evidence. Id. at 472. Craik does not require, as Emanuel asserts, that the district court make findings in all instances concerning compliance with affirmative action plans. We hold that the district court did not err in failing to make specific findings of fact concerning the Army's compliance or non-compliance with its affirmative action plans.
 
 Class Certification
 
 34
 Fed.R.Civ.P. 23(a)(1) requires the district court to determine, among other things, as a prerequisite to class certification that a class is "so numerous that joinder of all members is impractical." This court has not established any rigid rules regarding the necessary size of classes. Boyd v. Ozark Airlines, Inc., 568 F.2d 50, 54 (8th Cir.1977). In determining whether the "numerosity" requirement is satisfied, the number of persons in a proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant. Paxton, 688 F.2d at 559-60. In Paxton, we held that 75 black employees in a promotion class carved out of a pool of 418 employee promotions satisfied the numerosity requirement. Id. at 560-61. In addition to the number of persons in the class, it was significant in Paxton that none of the black employees in the promotion class could, in an individual suit, obtain the broad-based declaratory and injunctive relief that the class sought. Id. at 561.
 
 
 35
 The district court in the present case denied certification of a class of black males employed at TSARCOM on the basis that the proposed class failed to satisfy the requirement of "numerosity." The district court initially denied Paige's request to certify a promotion class consisting of all of the approximately 200 black male civilian employees who worked at TSARCOM. The district court held instead that black male civilian employees at TSARCOM who had been denied a promotion due to their race or had been deterred from seeking a promotion could constitute a class. Certification Memorandum and Opinion at 2.
 
 
 36
 In identifying the potential members of this class, the district court considered the administrative class pre-complaint which Paige had filed and the manner in which this complaint was resolved. In accordance with a Memorandum of Understanding executed to resolve the pre-complaint, the Army permitted black male civilian employees at TSARCOM to file a complaint concerning any alleged discrimination occurring within the preceding two year period. Seventy-eight informal complaints were received. After extensive negotiations, 29 complaints were withdrawn; another 20 were settled without an admission of discrimination. Of the remaining 29 complaints, only 11 black male employees filed formal complaints. Based on this history, the district court concluded that 11 plaintiffs did not represent such a great number as to make joinder impracticable. Id. at 2.
 
 
 37
 A district court's decision to grant or deny class certification will be overturned only if there is an abuse of discretion. E.g., Jones v. Hutto, 763 F.2d 979, 981 (8th Cir.), vacated on other grounds, 474 U.S. 916, 106 S.Ct. 242, 88 L.Ed.2d 251 (1985). We hold that the district court did not abuse its discretion in holding that the class of potential plaintiffs did not meet the "numerosity" requirement.
 
 
 38
 Accordingly, the judgment of the district court is affirmed.
 
 
 39
 HEANEY, Circuit Judge, dissenting.
 
 
 40
 I respectfully dissent because after examining the record and the exhibits, I am left with the firm conviction that the district court's finding that the defendants did not discriminate against Alston Emanuel is clearly erroneous.
 
 
 41
 On January 6, 1976, the U.S. Army Civilian Appellate Review Agency found:
 
 
 42
 A. That Mr. Mervin E. Edwards did discriminate against Mr. Alston A. Emanuel, the complainant, because of his race by providing unfair and subjective evaluations of Mr. Emanuel's skills, knowledges, abilities, and personal characteristics, and utilized biased evaluations to select a White candidate [John W. Snyder] who was not as well qualified as the complainant.
 
 
 43
 Conclusion A, p. 10, Exhibit 12.
 
 It recommended:
 
 44
 A. That the complainant's allegation of discrimination because of his race be confirmed in writing to him. That he be promoted retroactively to the Packaging Specialist * * * position * * * effective 09-14-75.
 
 
 45
 B. That promotion selection authority be withdrawn from Mr. Edwards for a period of one year. Further, all placement actions in the Materiel Management Directorate be reviewed personally by the EEO Officer and appropriate senior civilian personnel officials for a period of one year, to assure compliance with the EEO Program as it pertains to minority group members.
 
 
 46
 C. That appropriate corrective action against the discriminating officials be considered as prescribed in CPR 751, Appendix A.
 
 
 47
 Recommendations, p. 13, Exhibit 12.
 
 
 48
 The Army did not appeal from this decision and it promoted Emanuel. Snyder, however, was permitted to retain the higher rating that had been given to him for reasons of race rather than merit. Both men continued to work at various jobs in the packaging division until the fall of 1980. At that time, another vacancy arose, Snyder and Emanuel made application for the higher position, and again Snyder was selected.
 
 
 49
 Emanuel again filed a formal complaint of discrimination, and again the U.S. Army Civilian Appellate Review Agency carefully reviewed the evidence, and again found that Emanuel had been discriminated against because of his race, and that again the beneficiary had been Snyder. The Review Agency concluded:
 
 
 50
 A. That Mr. Emanuel's qualifications were not accorded full consideration for the aggrieved position and, as a result, he was discriminated against because of his race in his nonselection for promotion to the position of Supervisory Packaging Specialist * * *. This conclusion is predicated on a comparative analysis of the overall qualifications of the complainant and Mr. Snyder which shows that of the five factors relied on in the selection action, Mr. Emanuel possessed superior experience, more job-related training and self-development and had completed a higher level of formal education than the selectee.
 
 
 51
 Conclusion A, p. 13, Exhibit 14.
 
 
 52
 The conclusion was based on its specific findings that Emanuel had greater occupational experience (Finding 2, page 11, Exhibit 14); that Emanuel had completed a higher level of formal education than Snyder (Finding 6, page 12, Exhibit 14); that Emanuel had a better record of job-related training and self-development than Snyder (Finding 7, page 12, Exhibit 14); and on a general finding:
 
 
 53
 With respect to the qualifications of the selectee [Snyder] and Mr. Emanuel highlighted above, Mr. Emanuel's job-related achievements and accomplishments in experience, formal education and job-related training and self-development (3 or 60% of the factors (5) relied on in the selection action) projects his overall qualifications for the position to be superior to those of the selectee.
 
 
 54
 Finding 8, p. 12, Exhibit 14.
 
 
 55
 The Review Agency found that Snyder had higher SKAP ratings than Emanuel, but that these ratings accounted for only forty percent of the total score and were thus not as important as the factors listed above in determining overall qualifications. More importantly, these ratings were largely derived from reports submitted by Edwards--the very person who had discriminated against Emanuel four years earlier.
 
 
 56
 As I read the district court's opinion, it gave little or no weight to the findings of the Review Agency. Instead, it relied heavily on Lieutenant Colonel Straeb's testimony that the principal reason for promoting Snyder was his superior SKAP ratings. In doing so, the district court ignored the fact that Snyder's SKAP ratings were higher than those of Emanuel because they originated with Edwards. (T. Vol. 2, p. 68) The district court specifically credited Edwards' testimony as being more credible than that of Emanuel. While credibility is for the district court, its confidence in Edwards was demonstrably misplaced.
 
 
 57
 We might have another case if Colonel Straeb had gone back into the record and thoroughly reviewed the earlier case of discrimination against Emanuel. Straeb perhaps could then have concluded that Snyder's SKAP ratings by Edwards were not tainted by a discriminatory evaluation. He did not do so. The following colloquy demonstrates that fact:
 
 
 58
 Q So you knew before you made the selection that Mr. Emanuel had filed a discrimination complaint against the directorate involving Mr. Snyder? * * *
 
 
 59
 A I was aware of that, yes.
 
 
 60
 Q And you were aware that Mr. Emanuel had been awarded the job that Mr. Snyder had been awarded[?]
 
 
 61
 A What he showed me proved that he was in fact a GS 12 on a certain date * * * and I then clarified that with the personnel division.
 
 
 62
 * * *
 
 
 63
 * * *
 
 
 64
 Q * * * [Y]ou did go to personnel?
 
 
 65
 A Yes. I--just on that particular point, just to verify that the date he was a GS 12 was in fact correct.
 
 
 66
 Q And personnel told you all about it, didn't they?
 
 
 67
 A No, they didn't.
 
 
 68
 Q * * * Did you also make a call to Mr. Greenwell and Mr. Edwards or anybody else about the discrimination[?]
 
 
 69
 A No.
 
 
 70
 Q Did you make an inquiry of the Director of TSARCOM, General whoever it was? Did you make an inquiry as to what he had done?
 
 
 71
 A No.
 
 
 72
 Q In terms of his findings?
 
 
 73
 A No.
 
 
 74
 Q You didn't do any of those things?
 
 
 75
 A. No.
 
 
 76
 T. Vol. 2, pp. 74-75.
 
 
 77
 The only conclusion that I can draw from this failure is that Colonel Straeb, the appointing officer, was not interested in determining the basis of Emanuel's and Snyder's SKAP ratings which were claimed to be the most important element in Straeb's decision to award the job to Snyder.
 
 
 78
 We should reverse outright and remand to the district court for a determination of damages.
 
 
 
 [1]
 The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Whether an employer's practice of committing employment decisions to the unchecked discretion of white supervisory staff is subject to the disparate impact test under Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) is before the United States Supreme Court in Watson v. Fort Worth Bank & Trust, 798 F.2d 791 (5th Cir.1986), cert. granted in part, --- U.S. ----, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987)